**Charles CIESLINSKI, et al., Plaintiffs,**

v.

**Joseph CASSINO, personally and in his official capacity as Commissioner of the City of Yonkers Police Department and the City of Yonkers, Defendants.**

**No. 99CIV2677 (CM).**

United States District Court, S.D. New York.

Dec. 21, 1999.

Lawrence J. McElroen, Farrauto, Berman & Fontana, Yonkers, NY, for Plaintiffs.

John O'Reilly, Hitsman, Hoffman, O'Reilly, Elmsford, NY, Elisabeth A. Palladino, William M. Mooney, Corporation Counsel of the City of Yonkers, Yonkers, NY, for Defendants.

McMAHON, District Judge.

The facts in this matter are undisputed. Plaintiffs are police officers in the City of Yonkers. They are members of the Criminal Identifications Unit, a unit within the Investigational Services Bureau of the Yonkers Police Department. CIU serves as a support unit for the patrol force and the Detective division. At the request of members of either Patrol or detectives CIU members collect evidence at crime scenes. The primary responsibility of CIU officers is the collection and classification of evidence.

By letters dated January 11, 1999, to defendant Joseph Cassino, Commissioner of Police of the City of Yonkers, plaintiffs asked to be designated as detectives pursuant to New York Civil Service Law Section 58, which provides, in pertinent part, that in any jurisdiction other than New York City (the fabled "city with a population of more than one million"), any permanently appointed police officer who "is temporarily assigned to perform the duties of detective or investigator shall, whenever such assignment to the duties of detective or investigator exceeds eighteen months, be permanently designated as a detective or investigator and receive the compensation ordinarily paid to persons in such designation." This law was originally passed in 1990 to prevent the common practice of assigning police officers to do the work of detectives while keeping them at a lower rank and paying them less money. For technical reasons having nothing to do with that underlying motive, the New York Court of Appeals declared the law unconstitutional in 1995, *Wood v. Irving,* 85 N.Y.2d 238, 623 N.Y.S.2d 824, 647 N.E.2d 1332 (1995), whereupon the legislature passed the measure a second time, adding language to answer the constitutional objection of the Court of Appeals. The language that is relevant for our purposes—namely, that any police officer who is temporarily assigned to perform the duties of a detective for more than 18 months must be made a detective—remained unchanged in both the 1990 and the 1997 versions of the statute.

By making their request, the plaintiff officers necessarily contended that their work in the CIU constituted a temporary assignment to detective work that had continued beyond 18 months. Cassino, who has testified in a related proceeding that his office has a policy of promoting temporarily assigned detectives to that rank after 18 months in conformity with the Civil Service Law, asked various people in the Department for their view as to whether the CIU members were performing detective work. It appears (albeit not entirely from admissible evidence) that some said they were and some said they were not. The Commissioner sided with those who said they were not and notified the officers by letter dated February 23, 1999 that, after careful consideration, he was denying their request. Commissioner Cassino did not follow any formal hearing procedure before making his determination.

At that point, as so often seems to happen, the officers bypassed the route most likely to offer them redress—they did not go into the New York State Supreme Court and bring an Article 78 proceeding challenging the Commissioner's decision on the ground that Cassino's determination about the nature of their work was arbitrary and capricious and contrary to law. Instead, they flew into federal court, alleging that their constitutional rights had been violated in two ways: (1) procedurally, in that they were deprived without due process of their promotion to detective—in which they claimed to have a property interest by virtue of Civil Service Law Section 58; and (2) substantively, in that the Commissioner had deprived them of their statutorily-mandated promotion in a way that shocked the conscience or interfered with rights implicit in the concept of ordered liberty. Both constitutional claims depend for their viability on plaintiffs' having a property interest in a Section 58 promotion to detective. In addition, plaintiffs asserted a State law claim under Section 58.

Commissioner Cassino has moved for summary judgment on a variety of grounds. I need not reach all of them, because he is clearly entitled to dismissal of this case for failure to state any viable constitutional claim.

I turn first to the question of whether plaintiffs have a property right in a promotion to detective pursuant to Section 58. They might, but only in one circumstance: if they were in fact temporarily assigned to perform the duties of a detective or investigator for a period exceeding 18 months. Should that set of facts pertain, then the law requires that they be promoted to the grade of detective and be paid accordingly. The statute is plain on its face. Its language is mandatory. Yonkers' invocation of Section 75 of the Civil Service Law, which concerns entitlement to a hearing when an employee has been removed or disciplined, is entirely off the mark and has nothing whatever to do with the issue before the Court.

■ Unfortunately for plaintiffs, that is far from the end of the inquiry. The Civil Service Law does not specify what duties constitute "the duties of a detective or investigator." That is left entirely to the discretion of local authorities. Of this, the legislative history of Civil Service Law Section 58, in both its prior and current incarnations, leaves no doubt: according to a memorandum prepared by the New York State Department of Civil Service and submitted to the Governor in connection with his consideration of the revised Section 58, the local civil service commission or personnel officer retains full discretion to classify particular positions as being functionally equivalent to detective or investigator positions. Obviously, the mere fact that a police officer SAYS he is doing such work does not make it so. Neither does the fact that a police officer (like a member of the CIU) is involved in *investigations,* since to a greater or lesser extent ALL police officers do investigative work (as opposed to "the work of... an investigator"). What makes a particular line of work the func-

tional equivalent of detective work is the fact that the personnel officer so determines. If his determination is arbitrary and capricious, without substantial evidentiary support and contrary to law, then it can be overturned pursuant to Article 78. But absent an official determination that an officer's job is, in effect, a detective's job, the Civil Service Law does not mandate that she be promoted.[1] Thus, the officer lacks both a property right in the promotion and any constitutional claim, either substantive or procedural.

 If, as plaintiffs contend, they have been deprived of some property right in a Section 58 promotion, they have an adequate remedy under State law: an Article 78 proceeding. That is, in fact, the ideal forum in which to adjudicate claims that a local official erroneously determined that a CIU officer's job was not the equivalent of detective work. It has long been the law in this Circuit that the availability of Article 78 as post-deprivation remedy bars claims for violations of procedural due process. See *Hellenic–American Neighborhood Action Committee v. City of New York*, 101 F.3d 877 (2d Cir.1996). It is true that Judge Winter's opinion in HANAC distinguishes between alleged constitutional violations that are the product of established policy (for which post-deprivation remedies are not necessarily sufficient) and those that result from the random act of a public official (for which they are). But plaintiffs' effort to shoehorn themselves into the former category borders on the frivolous. The CIU officers disagree with Commissioner Cassini's determination that they do not do the work of a detective or an investigator. That determination is not the product of any policy of the City of Yonkers; it is, rather, his random and singular act as applied to their particular duties. Thus, the availability of a post-deprivation remedy—i.e., a

place where that random and singular decision can be reviewed for compliance with law—fully satisfies any constitutional concerns that plaintiffs may have.

To the extent that plaintiffs prefer to have the Commissioner's job classification decision reviewed on the merits here rather than next door, they have come to the wrong place. What sort of jobs fall, or ought to fall, within particular Civil Service classifications is peculiarly a matter of New York State law. It has no federal implications whatsoever. Judges of New York's Unified Court System are far more competent to pass judgment on such matters than I am. Indeed, it would be the height of arrogance for a federal court to determine a matter of purely State interest on which the State courts have yet to speak. My colleague Judge Brieant, who recently dismissed a similar case involving other disgruntled members of the Yonkers Police Force, *Calabrese v. Christopher*, 98 Civ. 1312 (S.D.N.Y.)(May 25, 1999), argued persuasively that abstention would be entirely appropriate in this situation. This case, as Judge Brieant noted in *Calabrese*, presents a legitimate legal question concerning the administration of the New York Civil Service law. Such a dispute should be settled by the State courts, rather than in the context of federal constitutional litigation.

As plaintiffs state no cognizable federal claim, this Court declines to entertain their State law claims.

Plaintiff's claims under the first cause of action is dismissed with prejudice. The second cause of action is dismissed without prejudice to being actually brought in New York State Supreme Court. The clerk of the Court is directed to enter judgment accordingly. The pre-trial conference scheduled for December 20, 1999 is cancelled in light of this decision.

---

1. There is also the question of whether the members of the CIU have been "temporarily" assigned to do anything at all. It appears from this record that the work they do is their permanent work. Whether Section 58 pro-

motions are available when temporary assignments are not involved presents a matter of statutory construction that has not yet been addressed by any court of the State of New York, as far as I am aware.

This constitutes the decision and order of the Court.